David Paul GARBER, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–83–00041–CR.

Court of Appeals of Texas, El Paso.

April 11, 1984.

William Ellis, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

This is an appeal from a jury conviction for delivery of methaqualone. The court assessed punishment at six years imprisonment. We affirm.

In Ground of Error No. One, Appellant contends that he was entitled to a mistrial since he was exposed to a member of the jury while in handcuffs. After jury selection, the members of the jury were released and instructed to return to the courtroom at 2:30 p.m. At approximately 1:50 p.m., a sheriff's deputy escorted the handcuffed Appellant back to the courtroom. In the hall outside. the courtroom, the two passed one member of the jury who had returned early. The deputy was not armed. No words were exchanged with or in the presence of the juror. Appellant's immediate motion for mistrial was denied. The court offered an instruction to the jury but Appellant declined.

■ Appellant's only cited authority, *Moore v. State,* 535 S.W.2d 357 (Tex.Cr. App.1976), found a reversible infringement of the presumption of innocence where, over objection and without justification ap-

pearing in the record, the defendant was brought into the courtroom in handcuffs in the presence of the jury. Here we are dealing with a single, chance exposure to a single juror outside the courtroom. The Appellant was being returned to the courtroom well in advance of the anticipated return of the jurors. The sheriff's deputy was not the same one present at the time of jury selection and consequently, could not have recognized the lone juror seated in the hallway. These facts sufficiently distinguish this case from *Moore* and render it incumbent upon the Appellant to affirmatively show prejudice to his cause. *Wright v. Texas,* 533 F.2d 185 (5th Cir.1976); *Garcia v. State,* 634 S.W.2d 888, 893 (Tex.App. —San Antonio 1982, no pet.). No such showing was attempted in this case. Ground of Error No. One is overruled.

■ In Ground of Error No. Two, Appellant asserts that the court erred in denying his motion to set aside the indictment for failure to comply with the speedy trial priorities set out in Tex.Code Crim.Pro.Ann. art. 32A.01 (Vernon Supp.1983). Appellant offered evidence that Ramon A. Montes, Sheriff of El Paso County, was indicted on three counts of official misconduct on November 10, 1982. Montes was admitted to bond on the same date and remained free on bond throughout his trial, ending December 13, 1982. Appellant's indictment predated that of Montes and Appellant remained in custody throughout the period ending December 13, 1982. Appellant's trial was conducted on January 10, 1983. No speedy trial complaint is raised under Article 32A.02. Appellant contends that it was the State's burden to present evidence of the impracticability of trying his case in advance of Montes.

■ Article 32A.01 is directed to the trial courts of this state, while Article 32A.02 is directed toward prosecutorial delay. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979). The record does not reflect that the Montes trial was accelerated to the detriment of the confined Appellant upon motion of the prosecutorial authority.

Furthermore, the very language of Article 32A.01 indicates that while the order of trial priorities between incarcerated and bonded criminal defendants is mandatory, the mechanics of effectuating such priorities must be flexible and subject to reasonable, good-faith variation. Unfortunately, our society could not tolerate a rigid system under which bonded defendants must wait until the jails are empty before they may proceed to trial. Those individuals and society as a whole have a right to speedy trial as well. A single instance of a bonded defendant going to trial before one in pretrial confinement does not demonstrate a violation of Article 32A.01.

■ Additionally, we note that in this specific instance the acceleration of Sheriff Montes' trial for official misconduct was justified by a substantial State interest in avoiding any prolonged disturbance of the proper operation of the chief law enforcement agency within the county. Ground of Error No. Two is overruled.

In Ground of Error No. Three, Appellant contends that the evidence consisting of two vials of pills taken from a closed safe in his bedroom closet should have been excluded as the product of an illegal, warrantless search.

Operating in an undercover capacity as a purchaser of drugs, Detective Dale Newkirk arrived at the Appellant's apartment and was admitted by the Appellant into the bedroom. Appellant removed two vials of pills from a safe located in the closet. He poured the contents on the bed and allowed Newkirk to select thirty capsules. At that moment, backup police arrived and knocked on the door. Appellant picked up the pills, other than those already tendered to Newkirk, and returned them to the vials and replaced the vials in the safe, closing but not locking the door. Newkirk identified himself and placed Appellant under arrest. As the latter was gathering his clothes, he grabbed two of the thirty pills on the bed and swallowed them. He was then physically restrained. Newkirk went to the safe and retrieved the two vials of pills which were subsequently introduced at trial.

■ Appellant's complaint does not withstand even the threshold question of whether a "search" took place. A search is a "quest for, a looking for, or a seeking out of that which offends against the law." *Vargas v. State*, 542 S.W.2d 151, 153 (Tex. Cr.App.1976). Newkirk's action was not an investigative quest; it was a seizure of that which had already been disclosed to him. Had Appellant initially drawn the items from an undisclosed location and subsequently returned them to some cache unknown to Newkirk, we would be confronted with a different situation, one requiring a warrant before an examination of the premises could commence.

■ Appellant's stance also falls short of the reasonable expectation of privacy standard enunciated in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The only expectation of privacy exhibited by Appellant was with regard to those knocking on the door. Newkirk was fully admitted to Appellant's confidence with regard to the safe and its contents. Unfortunately his confidence was misplaced. Ground of Error No. Three is overruled.

■ In Ground of Error No. Four, Appellant contends that the court should have directed a verdict in his favor since the testimony of the offeree was not corroborated by other evidence as required by Tex.Rev.Civ.Stat.Ann. art. 4476–15, sec. 1.02(8) (Vernon Supp.1984). The only other evidence tending to connect Appellant with the commission of the offense consisted of the pills and capsules and the two prescription vials bearing labels made out in the name of the Appellant.

■ Appellant's challenge is two-fold. He first contends that the presence of the drugs allegedly offered for sale cannot supply the necessary corroboration.

A process of simple logic compels the conclusion that the pills may have been corroborative of possession, but they cannot be corroborative of an offer to sell. To hold otherwise would hold

meaningless the requirements of corroboration in delivery cases, especially as in this case where the testimony of offeree was an essential ingredient to the admissibility of the pills themselves. (Brief of Appellant at page 11).

The first prong of Appellant's argument has a superficial appeal which only evaporates upon realization that this comparative distinction is incorrectly drawn between possession and delivery offenses. That is not the dividing line for the corroboration requirement. Delivery in the form of an offer to sell is the only situation requiring corroboration. Deliveries by actual or constructive transfer, as well as possessory offenses, require no corroboration, thus the underlying distinction is not, as suggested by Appellant, between possessory and delivery offenses. The factor common to the non-corroboration offenses is that the drugs must be present in some fashion, as an element of the offense. Actual presence of the drugs is not an element of the offense of delivery by offer to sell. Hence, a corroboration requirement is superimposed by the legislature. While Appellant suggests the use of other forms of corroboration such as tape recordings, we can think of no more appropriate corroboration than the offeror's possession (or in this case actual tender) of the drugs. Their presence supports not only the intention to sell, but the ability to perform the contract. This is not to say that the presence of any drugs will serve as corroboration for an offer to sell. The type and quantity of drugs present should be consistent with the terms of the offer testified to by the offeree, either as conforming goods or a representative sample of the proffered merchandise. If those qualifications are met, then the actual presence of the drugs can serve as corroboration.

The second prong of Appellant's challenge addresses the source of the corroboration. Section 1.02(8) of the Controlled Substances Act requires that the corroboration be "by a person other than the offeree or by evidence other than a statement of the offeree." In this case, the State's corroboration did not consist of testimony as to audio-visual observations of the offeree or any other individual. It consisted of physical evidence including the pills and pharmacy vials bearing prescription labels in Appellant's name. Appellant contends that this physical evidence is without admissibility or inculpatory meaning in the absence of the testimony of the offeree. He argues that under the standard of review employed in cases dealing with corroboration of accomplice witness testimony, the drugs cannot independently corroborate the offense.

The various corroboration requirements established in the Code of Criminal Procedure and Penal Code present a spectrum of stringency in appellate review. The most severe requirements are imposed by Article 38.14 under which the accomplice testimony must be excluded from consideration and the remainder of the record scanned for other evidence tending to connect the defendant to the commission of the offense. *Graham v. State*, 643 S.W.2d 920 (Tex.Cr. App.1983); *Chambers v. State*, 630 S.W.2d 413 (Tex.App.—Houston [14th Dist.] 1982). Under such a standard, this case would have to be reversed.

At the other end of the spectrum, is the type of corroboration required by Tex.Penal Code Ann. sec. 15.03(b) (Vernon 1974). An individual may not be convicted of criminal solicitation upon the uncorroborated testimony of the person solicited "unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation." If the present case were analogized to the Section 15.03(b) corroboration requirement, affirmance should result. Here, the State alternatively alleged both actual delivery and delivery by offer to sell. The State elected to proceed on the latter theory, abandoning the former, even though the evidence at trial sufficiently demonstrated an actual delivery. *Garza v. State*, 622 S.W.2d 85 (Tex.Cr.App.1981); *Rasmussen v. State*, 608 S.W.2d 205, 206 (Tex.Cr.App.1980). The largest group of pills was displayed by the Appellant to Detective Newkirk with

instructions to select the ones he wanted to purchase. That separation was performed. When the backup unit knocked at the door, Appellant returned the remainder of the pills to the safe, but left Newkirk's selection on the bed. This is certainly a clear indication that even in Appellant's mind an actual transfer had taken place.

In mid-spectrum is the corroboration requirement of Tex.Code Crim.Pro.Ann. art. 38.07 (Vernon Supp.1984). There, the corroboration of certain sexual offenses is not required if outcry is made by the victim within six months of the offense. While the test to determine sufficiency of corroboration has been equated to that employed under Article 38.14, the entire test may be avoided by evidence of timely outcry, and there is no requirement that the outcry be proven by testimony independent of the victim's. See: *Nemecek v. State*, 621 S.W.2d 404 (Tex.Cr.App.1980). Compare: *Calais v. State*, 624 S.W.2d 811 (Tex.Cr.App.1981); *Hargrove v. State*, 579 S.W.2d 238 (Tex.Cr.App.1979); and *Kester v. State*, 636 S.W.2d 232 (Tex.App.—El Paso 1982, no pet.).

■ In the present context, the physical evidence offered as corroboration is only meaningful in conjunction with the offeree's testimony and not independent of it. The remaining question is whether or not to employ the stricter standard of review associated with Article 38.14, Tex.Code Crim.Pro.Ann. (Vernon 1979). We hold that that is not justified. Accomplice testimony has been traditionally viewed as suspect, particularly where associated with plea bargaining and immunity. The two major credibility dangers to be avoided in the trial are innocent mistake and deceit. With accomplice testimony, it is the latter which is of primary concern and hence, the stricter standard of corroboration is required.

It is equally true that undercover police officers have routinely been excused from accomplice status in narcotics delivery cases. *Lopez v. State*, 574 S.W.2d 563 (Tex.Cr.App.1978); *Passmore v. State*, 544 S.W.2d 399 (Tex.Cr.App.1976); *Howery v.*

*State*, 528 S.W.2d 230 (Tex.Cr.App.1975). This alone militates against the need to employ the stricter standard. While we hasten to recognize that narcotics officers are not immune to deceit in their capacities, as witnesses, this is not the primary concern of Section 1.02(8) of the Controlled Substances Act. If it were, then corroboration would be required in every delivery case, whether actual, constructive or by offer to sell. Appellant is correct in stating that all that separates this case of offer to sell from simple possession is the word of the officer as to the existence of the drugs and the offer. The same, however, is true when comparing this case to any single-officer arrest under an actual delivery indictment and charge. The latter case would not necessitate corroboration. Thus, the corroboration requirement for an offer to sell is not primarily a safeguard against deceit on the part of the witness officer. What then is its primary purpose and has that been satisfied in this case?

At the time this provision was enacted, the preparatory offense provisions of Tex. Penal Code Ann. chapter 15 (Vernon 1974) did not apply to the Controlled Substances Act. *Dubry v. State*, 582 S.W.2d 841 (Tex.Cr.App.1979). Even today, under the Tex. Penal Code Ann. sec. 15.05 (Vernon 1974), attempts, conspiracies or solicitations to commit a preparatory offense do not constitute offenses in themselves. Where the contact between suspect and officer has reached some stage of verbal conduct alone, there is a need to insure that the culpable action has sufficiently progressed toward fruition to preclude punishment for guilty thoughts alone. Furthermore, there is the not infrequent occurrence of an individual, with no intent to sell narcotics, who enters negotiations with a prospective buyer to defraud him of his money. Whatever such conduct may be, it is not a delivery of controlled substance by offer to sell.

In summary, a minimum of culpability for delivery by offer to sell may consist of verbal conduct alone. It is this intangibility and not potential offeree deceit which justifies the corroboration requirement.

Under such a rationale, there is no need to assess the corroboration independently of the offeree testimony. Applying this analysis to the present case, we conclude that the corroboration was sufficient to sustain the verdict. Ground of Error No. Four is overruled.

In Ground of Error No. Five, Appellant contends that the prosecution in final argument commented upon his failure to testify. The prosecutor stated:

> We go to the physical evidence. The uncontested evidence that was brought out of Mr. Garber's bedroom. . . .

The challenged comment was neither a direct reference to the Appellant's failure to testify nor a necessary reference to his failure to testify on a matter that only he could explain. On its face, the comment was not an assertion that the removal of the evidence from Appellant's bedroom was uncontested. It clearly relates to the nature of the physical evidence—one vial allegedly containing ten Quaalude pills and one vial containing Tuinal. The nature of the pills was subject to determination and testimony by witnesses other than the Appellant. He could have obtained expert testimony to rebut the State's chemical analysis or he could have produced evidence from the pharmacy which filled the prescriptions. Even if the comment were interpreted as a reference to the extraction of the evidence from his bedroom, he and Detective Newkirk were not the only persons present. His female visitor remained in the living room, but the police backup personnel were present at the seizure itself. The defense objection was properly overruled. *Angel v. State*, 627 S.W.2d 424 (Tex.Cr.App.1982); *Nickens v. State*, 604 S.W.2d 101 (Tex.Cr.App.1980). Ground of Error No. Five is overruled.

The judgment is affirmed.