### Frank VELA, Appellant,

v.

### The STATE of Texas, Appellee.

### No. 01–88–01116–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 8, 1989.

Discretionary Review Refused
Oct. 25, 1989.

Roland Brice Moore III, Houston, for appellant.

John B. Holmes, Dist. Atty., Jose Gonzalez–Falla and Bob Stabe, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, DUGGAN and HUGHES, JJ.

### OPINION

HUGHES, Justice.

After appellant's motion to suppress was overruled, he pleaded guilty to possession of a controlled substance, namely cocaine, weighing at least 400 grams. Pursuant to a plea bargain agreement, his punishment was assessed at 45 years confinement plus a fine of $100,000.

In three points of error, appellant contends that the trial court erred in overruling his motion to suppress because the cocaine was seized in a warrantless search of appellant's home and was not justified by an exception to the warrant requirement; there was insufficient probable cause to justify the seizure without first obtaining a warrant; and the cocaine was not seized at the scene of the arrest, but

occurred at a different place, namely, appellant's residence.

Drug Enforcement Agent Tim Binkley testified that he arranged to buy cocaine from appellant. In a telephone conversation, appellant told Binkley that the price would be $13,000 per pound or $24,000 for a kilogram. Binkley told appellant he wanted to purchase a kilogram and arranged to meet appellant at his apartment for the sale. Appellant gave Binkley directions to an apartment, 1318 Heights Boulevard, Apartment 1, where appellant lived with his mother. When Binkley arrived, appellant flagged him down on the street and asked him to come up to the apartment. Binkley accompanied appellant to the apartment, but refused to go inside because the surveillance and arresting teams could not protect him inside the apartment. He stood at the door as appellant entered. Appellant showed Binkley a brown plastic bag lying on the kitchen table, just two feet inside the doorway. He "pulled out the kilogram of cocaine and said here it is." He invited Binkley inside to check the drug, but Binkley did not go inside. Binkley saw another man seated in the living room.

Binkley told appellant that his money was in his car and asked appellant to follow him. Appellant walked with him to the vehicle. Binkley gave the prearranged signal to the other officers, and both Binkley and appellant were arrested. The other officers secured the area, but could not find the apartment. Binkley returned and showed them the apartment. The door was still open, and the cocaine was laying on top of the brown bag on the kitchen table where appellant had left it. The other man in the apartment was gone. The officers then conducted a "security sweep" of the apartment to look for the man, but did not search the apartment.

Binkley admitted he considered obtaining a warrant, but he felt the other man in the apartment could leave with the cocaine or destroy it before a warrant was obtained. He testified that the name and address of the apartment occupants was noted on some utility bills found laying on a table.

Searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586–87, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable if the property can be linked to criminal activity. *Id.* "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

█ Appellant's display of the cocaine to the undercover agent deprives him of the right to claim a reasonable expectation of privacy. *See Garber v. State,* 671 S.W.2d 94 (Tex.App.—El Paso 1984, no pet.). In *Garber,* the court held there was no "search" because the defendant showed the officer the contraband and then returned it to a safe. *Id.* at 97. Appellant contends *Garber* is distinguishable because the undercover officer in that case actually went inside the apartment. Regardless of whether Binkley went inside, he did stand at the open door to the house, and appellant held the cocaine up for him to view.

█ In *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), the United States Supreme Court held that the burden rests on the State to show the existence of an "exceptional situation" to justify a warrantless search of a home. These "exceptional situations" are: (1) consent to search; (2) response to an emergency; (3) hot pursuit of a felon; (4) goods in the process of destruction; and (5) goods about to be removed from the jurisdiction. *Id.* at 34, 35, 90 S.Ct. at 1971, 1972. Vale was arrested on the street in front of the house, and officers then searched his house. In finding no exceptional situation, the Court reversed the conviction and held the warrantless search was illegal. The Court noted that the officers' ignorance of whether anyone was inside the house prevented them from using the emergency exception to justify a warrantless search.

Here, the State contends that the cocaine could have been removed or destroyed be-

cause Officer Binkley saw another man in the apartment. In *United States v. Gardner*, 553 F.2d 946 (5th Cir.1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978), the officers arrested two individuals outside a house where the officers knew one kilogram of cocaine was located. One of the men, an informer, told the agents that another female was still inside the house. The court held that the officers knew cocaine was on the premises and could have concluded disposal of the contraband was imminent because other individuals were in the house. *Id.* at 948.

As in the instant case, the agents in *Gardner* knew someone else was in the apartment. A similar situation also occurred in *United States v. Dohm*, 597 F.2d 535, 538 (5th Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 196 (1979). The agent exiting the house gave a pre-arranged signal, knowing the cocaine that he had seen was in the house with two individuals. The court found exigent circumstances existed to prevent disposal of the cocaine, "a powder which can easily be flushed down a toilet." *Id.* (quoting *Gardner*.)

The warrantless entry into the apartment was justified to prevent destruction or removal of the cocaine. Appellant's three points of error are overruled.

The judgment is affirmed.