Affirmed and Opinion filed October
14, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00484-CR



Tri M. Pham, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 337th District Court

Harris County, Texas

Trial Court
Cause No. 1170125



 

O P I N I O N 

Appellant, Tri M. Pham, appeals from his felony
conviction for delivery of a controlled substance, namely methamphetamine.  In
three related issues, appellant contends that the trial court violated his
constitutional and statutory rights under the federal and state constitutions
and article 38.23 of the Texas Code of Criminal Procedure by admitting evidence
seized from a co-defendant’s vehicle.  We affirm the trial court’s judgment.  

I.  BACKGROUND

On the afternoon of June 7, 2008, a number of
officers from the Houston Police Department were conducting undercover
surveillance in an area of southwest Houston where officers had previously made
numerous narcotics arrests.  Officer Larry Vaughn observed Nguyen Thai Ho park
his vehicle in a parking lot in the area under surveillance.  Appellant arrived
in the same parking lot and parked his vehicle close to Ho’s.  Ho then exited
his vehicle (empty handed), entered appellant’s vehicle, and closed the car door. 
Officer Vaughn observed the two men talking to one another; the men’s attention
seemed to be concentrated on the center console area inside the vehicle. 
Minutes later, Ho exited the vehicle, now carrying a “big plastic shopping
bag.”  Officer Vaughn believed that the bag’s contents were heavy because the
plastic was quite “stretched.”  The bag was white and opaque, and newspaper was
protruding from the top, concealing the bag’s contents.  Holding the shopping
bag, Ho returned to his vehicle and drove away.  Appellant also left the
parking lot in his vehicle, driving in a separate direction.  

Believing that a narcotics transaction had occurred
between appellant and Ho, Officer Vaughn radioed surrounding undercover officers
to assist in monitoring both vehicles.  Officer Vaughn followed appellant’s
vehicle in an unmarked unit; Sergeant Kerry Richards followed Ho’s vehicle. 
While following appellant, Officer Vaughn observed appellant commit three changing-lanes-without-signaling
violations, all arrestable traffic offenses.  Officer Vaughn instructed Officer
Kenneth Cockrill, a uniformed officer in a nearby marked vehicle, to stop
appellant for the traffic violations Officer Vaughn had observed.  Officer
Cockrill stopped and arrested appellant for the traffic violations and seized
appellant’s vehicle.  A subsequent search of appellant’s vehicle revealed
$1,730 in cash.

While following Ho, Sergeant Richards observed Ho
commit two traffic violations: failure to maintain a single lane of traffic and
changing lanes without signaling.  Sergeant Richards then instructed Officers
Lombardo and Sanchez, uniformed officers in a nearby marked unit, to stop Ho
for the traffic violations, also arrestable offenses.  Officers Lombardo and
Sanchez stopped Ho, and as Officer Lombardo approached the vehicle, he observed
Ho throw the white shopping bag to the backseat of the vehicle.  The officers
ultimately detained Ho and seized and searched the shopping bag, which
contained approximately 2,946 methamphetamine pills, more commonly known as
Ecstasy.  Ho was arrested and charged with possession of the methamphetamine
discovered in the shopping bag.  Appellant was subsequently charged with
delivery of the methamphetamine.  

Appellant pleaded not guilty to the delivery charge. 
Ho, however, pleaded guilty to the possession charge and testified against
appellant at his trial.  According to Ho, he had first experimented with
Ecstasy at appellant’s encouragement just two months prior to the June 2008
arrests.  Ho began abusing the narcotic and regularly purchased pills from
appellant.  Over a two-month period, Ho accrued a $450 debt and was unable to
pay appellant.  Appellant then offered to forgive the debt in return for a
favor:  Ho needed to deliver a bag to a third party.  Appellant instructed Ho to
meet him in the southwest Houston parking lot.  When Ho met appellant in the
parking lot, he entered appellant’s vehicle, and appellant gave Ho the white shopping
bag with delivery instructions.  Appellant told Ho to deliver the bag to a man named
Johnny, described as an Asian male with long hair in a white tank top.  Appellant
instructed Ho to deliver the bag to Johnny at a particular food market in southwest
Houston.  Appellant also instructed Ho to call him once the delivery had been completed. 
Ho then returned to his vehicle with the bag and proceeded to his meeting with Johnny. 
But Ho was stopped by police for the aforementioned traffic violations on his
way to deliver the bag.  Fearful that the bag contained narcotics, Ho threw the
bag to the back of his vehicle when he was stopped by officers.  The officers
later seized the bag and its contents and arrested Ho.  

After Ho’s testimony, appellant sought to suppress the
fruits of his arrest and evidence obtained from the search of Ho’s vehicle.  With
respect to appellant’s arrest, he contended that the arrest was unlawful under
chapter 14 of the Code of Criminal Procedure; thus, the fruits of the arrest—$1,730
in cash—should have been suppressed.  As to Ho’s traffic stop, appellant argued
that the search of Ho’s vehicle was illegal and, therefore, the results of the
search—the bag and its contents—should have been suppressed.  In response, the
State argued that appellant’s arrest was lawful and disputed appellant’s standing
to challenge the search of the shopping bag.  Specifically, the State claimed
that appellant had abandoned the bag by giving it to Ho and instructing Ho to
give the bag to a third party.  According to the State, because appellant
relinquished possession of the bag to Ho and never intended to repossess it,
appellant abandoned any privacy interest in the bag.  The trial court rejected
the State’s standing argument, ruling as follows:

            [T]he Court finds that the defendant  . . . had
constructive possession of the white plastic  . . . shopping bag and the
contents therein since he had made an actual delivery of same to . . . Ho for
an intended subsequent downstream delivery of the contraband.  Accordingly, the
Court concludes that [appellant] has standing to contest the stop of Mr. Ho’s
vehicle and the resulting search and seizure of the white grocery, or shopping
bag, containing the contraband.  

            However, the Court holds and finds that . . .
Ho was stopped and arrested for . . .  [a] traffic offense . . . which . . .
was committed in the presence and view of [an officer].

.      .      .

            [T]he Court holds that the traffic stop and
arrest of Mr. Ho were lawful; and, likewise, the resulting search of the white
grocery . . . bag and its contents were lawful.  Defendant’s Motion to Suppress
is therefore denied.

After the trial court’s ruling, appellant took the
stand in the presence of the jury.  He testified that he had loaned $1,500 to Ho,
and Ho planned to repay the personal loan to appellant on the day of their
arrests.  According to appellant, Ho asked appellant to meet him in the southwest
Houston parking lot.  When the men arrived, Ho entered appellant’s vehicle,
retrieved a bag from under his shirt, and pulled money from the shopping bag. 
Appellant took the money, and Ho exited the vehicle.  Appellant denied giving
Ecstasy pills to Ho and denied possessory or ownership interests in the shopping
bag.  The jury ultimately found appellant guilty of delivery of a controlled
substance, sentenced him to 10 years in prison, and assessed a $50,000 fine, both
of which were fully probated.  

On appeal, appellant argues in three related issues
that the trial court erred by denying his motion to suppress the contents of
the shopping bag.  In response, the State maintains its challenge to
appellant’s standing.  The State also argues that as a matter of public policy appellant
should be estopped from arguing he has standing because he subsequently testified
at trial that he had no possessory or ownership interest in the shopping bag.  Additionally,
the State argues that the search of Ho’s vehicle was legal under the plain view
and automobile exceptions to the warrant requirement.

II.  STANDARD OF REVIEW

We generally review a trial court’s ruling on a
motion to suppress for an abuse of discretion.  Balentine v. State, 71
S.W.3d 763, 768 (Tex. Crim. App. 2002).  We give almost total deference to a
trial court’s rulings on questions of historical fact and
application-of-law-to-fact questions that turn on an evaluation of credibility
and demeanor, but we review de novo application-of-law-to-fact questions
that do not turn on credibility and demeanor.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Estrada v. State, 154 S.W.3d 604,
607 (Tex. Crim. App. 2005).

Furthermore, in a suppression hearing, the trial
court is the sole trier of fact and judge of the credibility of the witnesses
and of the weight to be given to their testimony.  State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000).  The trial court may accept or reject
all or any part of a witness’s testimony.  Id.  When the trial court
makes no express findings of fact, as in this case, we review the evidence in
the light most favorable to the trial court’s ruling and assume that the trial
court made implicit findings of fact that support the ruling as long as those
findings are supported by the record.  Id.  

In determining whether a trial court’s decision is
supported by the record, we generally consider only the evidence before the
trial court at the time of the ruling because the ruling was based on it rather
than evidence introduced later.  Gutierrez v. State, 221 S.W.3d 680, 687
(Tex. Crim. App. 2007).  But this general rule is inapplicable when the parties
subsequently relitigate the suppression issue consensually.  Id.  Thus,
if the suppression issue is relitigated either without objection or with
subsequent participation in the inquiry by the defense, the defendant is deemed
to have elected to re-open the evidence, and we may consider the relevant trial
testimony in our review.  Rachal v. State, 917 S.W.2d 799, 809 (Tex.
Crim. App. 1996); Garcia v. State, 112 S.W.3d 839, 847–48 (Tex.
App.—Houston [14th Dist.] 2003, no pet.).  Here, the parties do not dispute
that the suppression issue was not relitigated at trial after the ruling on the
suppression issue.  Therefore, we will consider only the evidence admitted prior
to and at the time the trial court made its ruling.  

III.  STANDING TO ASSERT SEARCH AND SEIZURE PROTECTION

Appellant challenges the search of the shopping bag under
the United States and Texas Constitutions and article 38.23 of the Code of
Criminal Procedure.  And the State challenges appellant’s authority to make
constitutional and statutory claims under these provisions.  The court below
found that appellant had standing to assert the claims, but ultimately
concluded that the search and seizure were lawful.  Although the trial court
found that appellant had standing but denied the motion on another basis, as
the reviewing court, we may sustain the trial court’s ruling on the motion to
suppress on the ground that the evidence failed to establish standing as a
matter of law.  See Wilson v. State, 692 S.W.2d 661, 671 (Tex.
Crim. App. 1984); Sutton v. State, 711 S.W.2d 136, 137–38 (Tex.
App.—Houston [14th Dist.] 1986, no pet.).  Because the State challenged
appellant’s standing below and on appeal and because standing is an element of
appellant’s Fourth Amendment claim, we first consider whether appellant had
standing to challenge law enforcement’s search and seizure of the bag.   

The state and federal constitutions protect
individuals against official intrusion into places where and things in which
individuals have a reasonable expectation of privacy.  See U.S. Const.
amend IV; Tex. Const. art. I, § 9.  Moreover, article 38.23 provides: “No
evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case.”  Tex. Code Crim. Proc. Ann. art. 
38.23 (Vernon 2005).  To assert a challenge to a search and seizure under the United
States and Texas Constitutions and article 38.23, a party must first establish
standing.[1] 
See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  

Standing in this context is an individual’s right to
complain about an allegedly illegal government intrusion under the Fourth
Amendment and article I, section 9.  Id.  Fourth amendment rights are
personal rights which may not be vicariously asserted.  Rakas v. Illinois,
439 U.S. 128, 133–34 (1979) (citing Brown v.  United States, 411 U.S.
223, 230 (1973)); see also Kothe v. State, 152 S.W.3d 54, 59 (Tex. Crim.
App. 2004).  “A person who is aggrieved by an illegal search and seizure only
through the introduction of damaging evidence secured by a search of a third
person’s premises or property has not had any of his Fourth Amendment rights
infringed.”  Rakas, 439 U.S. at 134.  “And since the exclusionary rule
is an attempt to effectuate the guarantees of the Fourth Amendment, it is
proper to permit only defendants whose Fourth Amendment rights have been
violated to benefit from the rule’s protections”  Id. (citations
omitted).  Standing is a question of law which we review de novo.  Kothe,
152 S.W.3d at 59; Turner v. State, 132 S.W.3d 504, 507 (Tex.
App.—Houston [1st Dist.] 2004, pet. ref’d).    

Furthermore, a defendant bringing a motion to
suppress bears the burden of establishing all of the elements of his Fourth
Amendment and article I, section 9 claims.  See State v. Mercado,
972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (per curiam).  Part of that proof
includes the element that he had a reasonable expectation of privacy from law
enforcement intrusion.  See id.; see also Wilson,
692 S.W.2d at 663–64; Trinh v. State, 974 S.W.2d 872, 874 (Tex.
App.—Houston [14th Dist.] 1998, no pet.) (quoting Metoyer v. State, 860
S.W.2d 673, 677 (Tex. App.—Fort Worth 1993, pet. ref’d)); Kelley v. State,
807 S.W.2d 810, 815 (Tex. App.—Houston [14th Dist.] 1991, pet. ref’d).  To
determine whether appellant had a legitimate expectation of privacy, we must
first determine whether appellant demonstrated an actual subjective expectation
of privacy.  See Smith v. Maryland, 442 U.S. 735, 740 (1979); Villarreal,
935 S.W.2d at 138; see also Dominguez v. State, 125 S.W.3d 755,
762 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  If he did, we must next
determine if that subjective expectation is one that society is prepared to
recognize as reasonable.  Smith, 442 U.S. at 740; Villarreal, 935
S.W.2d at 138.  

Moreover, we consider the following factors in
determining whether a given claim is reasonable: (1) whether the accused had a
property or possessory interest in the thing seized or the place searched; (2)
whether the accused was legitimately in the place invaded; (3) whether the
accused had complete dominion or control and the right to exclude others; (4)
whether, before the intrusion, the accused took normal precautions customarily
taken by those seeking privacy; (5) whether the accused exhibited a subjective
expectation of privacy that the item would remain free from governmental
intrusion; and (6) whether the accused’s claim of privacy is consistent with
historical notions of privacy.  See United States v. Cardoza-Hinojosa,
140 F.3d 610, 615 (5th Cir. 1998) (quoting United States v. Ibarra, 948
F.2d 903, 906 (5th Cir. 1991)); Villarreal, 935 S.W.2d at 138.  This
list of factors is not exhaustive, and none is dispositive of a particular
assertion of privacy; rather, we examine the totality of the surrounding circumstances. 
Only after a defendant has established standing to complain may a court
consider whether he suffered a substantive Fourth Amendment or article I,
section 9 violation.  Kothe, 152 S.W.3d at 59.  

A.  Reasonable Expectation of Privacy:  Subjective Element

There is some evidence in the record that appellant had
a subjective expectation of privacy in the shopping bag.  His placing the
contents in an opaque bag and stuffing newspaper in the top to conceal its
contents evidences his subjective expectation of privacy in those materials.  See
United States v. Villarreal, 963 F.2d 770, 773 (5th Cir. 1992)
(“Individuals can manifest legitimate expectations of privacy by placing items
in closed, opaque containers that conceal their contents from plain view.”).  Appellant
also gave the bag to Ho, a friend and confidant whom appellant believed would
deliver the bag according to his specific instructions.  Accordingly, appellant
appears to have manifested his subjective expectation of privacy in the
shopping bag in question.  Still, the United States and Texas Constitutions do
not protect merely subjective expectations of privacy but only those
expectations that society is prepared to recognize as reasonable.  Smith,
442 U.S. at 740; Villarreal, 935 S.W.2d at 138.  

B.  Reasonable Expectation of Privacy:  Objective Element

The evidence does not support a conclusion that
appellant’s subjective expectation of privacy is one that society would
recognize as reasonable.  Appellant was not in the place searched, which was Ho’s
vehicle.  See Cardoza-Hinojosa, 140 F.3d at 615; see also Villarreal,
935 S.W.2d at 138.  And although appellant had a possessory and ownership
interest in the shopping bag at one time prior to the search of Ho’s vehicle,
those interests in the bag and its contents were compromised when appellant gave
the bag to Ho.  By giving the bag to Ho, appellant assumed the risk that his
confidant would reveal that information to the public, thus frustrating appellant’s
expectation of privacy.  Additionally, appellant no longer had dominion or
control over the bag or its contents.  He had relinquished the right to exclude
others from the bag and its contents.  Having assumed the risk that Ho would
betray the secrecy concerning the bag’s contents, appellant relinquished his expectation
of privacy.[2] 
More importantly, the evidence unequivocally reflects that appellant had no
intention of repossessing the bag:  by giving the bag to Ho, who in turn would
give it to a third party, appellant permanently disavowed possession and ownership
of the bag.[3] 
An individual cannot reasonably expect to maintain privacy in a shopping bag
when he has surrendered all of the normal incidents of ownership, including
possession and the right to exclude others, to another and has no intent to
regain possession or ownership of the item.  Cf. California v. Greenwood,
486 U.S. 35, 40 (1988) (“[R]espondents placed their refuse at the curb for the
express purposes of conveying it to a third party, the trash collector, who
might himself have sorted through respondents’ trash or permitted others, such
as the police, to do so.”).  Moreover, when a person displays contraband to
another person for the purpose of initiating a sale of the contraband, he holds
the contraband for public display, and a claim of an expectation of privacy can
no longer be made.  Cf. Vela v. State, 775 S.W.2d 11, 12 (Tex.
App.—Houston [1st Dist.] 1989, pet. ref’d).  Here, the evidence establishes
that appellant was distributing a controlled substance to a third party via
Ho.  

Under these specific facts, we conclude that
appellant’s subjective expectation of privacy is not one that society would
recognize as reasonable.[4] 
See Villarreal, 935 S.W.2d at 139.   Appellant has failed to establish
any state or federal constitution privacy interest and thus has no standing to
object to the search and seizure of the evidence under the United States and
Texas Constitutions.  Furthermore, article 38.23(a) does not confer third-party
standing to persons accused of crimes, such that they may complain about the
receipt of evidence that was obtained by violation of the rights of others, no
matter how remote an interest from themselves.[5] 
See Miles v. State, 241 S.W.3d 28, 47 (Tex. Crim. App. 2007). 
Accordingly, we overrule appellant’s first, second, and third issues and affirm
the trial court’s judgment.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Yates and Sullivan.

Publish
— Tex. R. App. P. 47.2(b).                                                                                  

 









[1]
In Rakas v. Illinois, the United States Supreme Court stated that the
issue is more properly considered one of substantive Fourth Amendment law
rather than “standing”; still, courts continue to discuss this area of law,
conceptually, as a standing issue.  439 U.S. 128, 133 (1978).





[2]
Appellant contends that this case is similar to “carrier” cases, where courts
have concluded that individuals “do not surrender their expectations of privacy
in closed containers when they send them by mail or common carrier.”  See
Villarreal, 963 F.2d at 773–74.  We are not persuaded by appellant’s
argument.  The relationship between a private carrier and its customer—a formal
relationship based upon monetary consideration—is substantially different from
the relationship between friends.  A customer who retains services from a
private carrier generally expects no one except the intended recipient to open
the shipment.  On the other hand, there is reason to assume that an
acquaintance, delivering an item  upon request, would open it, especially one
similar to the bag in this case, before it arrives at its destination. 
Presumably, there is a greater risk that an acquaintance or colleague
delivering an item, such as the one in this case, would look at the items or
expose the item to the public than a commercial carrier whose services have
been retained by a paying customer.  Accordingly, we reject appellant’s
argument.    





[3]
We also reject the State’s argument that appellant abandoned the property by
giving the bag to Ho.  The line of abandonment cases cited by the State is
distinguishable from the operative facts of this case:  the accused in the
cited cases generally disclaimed ownership before the search.  There is no
evidence in the instant case (that we may consider on review) reflecting that
appellant disclaimed ownership in the bag prior to or during the search.  Thus,
the abandonment line of cases is not on point. 





[4]
We also note that an argument similar to appellant’s has been rejected by the
United States Supreme Court and the Fifth Circuit.  See United States
v. Padilla, 508 U.S. 77, 78 (1993) (per curiam) (rejecting proposition that
a co-defendant obtains “a legitimate expectation of privacy for Fourth
Amendment purposes if he has either a supervisory role in the [drug] conspiracy
or joint control over the . . . property involved in the search or seizure”); United
States v. DeLeon, 641 F.2d 330, 337 (5th Cir. 1981) (concluding that a
co-defendant “may not assert an expectation of privacy in the security of a bag
in the possession of his agents” or co-defendants). 





[5]
We note that even presuming that appellant had established standing to raise a
Fourth Amendment, article 1, section 9, or article 38.23  claim, the record
sufficiently supports the trial court’s finding that the stop and search were
predicated on probable cause in light of the totality of the circumstances
surrounding the warrantless search.