Jack JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 58915.

Court of Criminal Appeals of Texas, Panel No. 2.

April 25, 1979.

Rehearing En Banc Denied July 18, 1979.

Phillip Westergren, Corpus Christi, for appellant.

William B. Mobley, Jr., Dist. Atty. and Eric Brown, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

## OPINION

DOUGLAS, Judge.

Jack Johnson appeals his conviction for aggravated rape. After finding that he had previously been convicted of a felony, the court assessed punishment at life.

Johnson contends that the court erred when it denied his request for a mental examination, admitted mug shots of Johnson, allowed a State's witness to bolster identification testimony, refused admission of a written prior inconsistent statement, admitted the fruits of an illegal search and seizure, allowed the State to make an inaccurate statement on voir dire, admitted inaccurate pictures of the victim, told the jury that he did not want a mistrial, refused to excuse a juror and continue the case with eleven jurors, refused to allow the defense to question a juror, admitted hearsay evidence and refused admission of checks. Johnson also contends that the prosecutor deliberately denied him a fair trial and specifically contends that the State committed error by suppressing evidence, referring to the defense's motion to suppress evidence, eliciting incompetent evidence that the victim's wounds looked like someone was trying to kill her, improperly questioning a female witness, and making repeated improper jury arguments. Appellant also contends that the evidence to support the aggravated portion of the conviction was insufficient as was the proof of his prior conviction and that the indictment was defective. We overrule the contentions and affirm.

S. J., a 17-year-old, had helped her grandmother move to Corpus Christi and was staying with her during the early summer of 1977. She arrived at her grandmother's apartment complex around 11:30 p. m. on June 21, 1977. A man, whom she identified as appellant, approached her car, punched her in the face, told her he had a gun and ordered her to come with him. S. J.'s hands were bound and she was driven in a pickup truck. Johnson told her that he doubted she would see daylight again. S. J. was taken inside a building where Johnson had sexual and anal intercourse with her. He then bound her legs, placed the rope around her neck, and inserted a metal rod in her vagina. He subsequently beat her with the rod. She was dragged naked back into the pickup and placed under a tarp. Johnson then drove her into the countryside and hit her several more times with the metal rod. S. J. testified that she played dead. Johnson drove off. S. J. was hospitalized for three days. She had numerous wounds and several cuts on the head which required eighteen stitches to close. Two doctors gave their opinions that the blows she sustained could have caused serious bodily injury and a substantial risk of death.

■ The aggravated portion of the instant indictment alleges that "in the course of compelling her to submit to such intercourse he did then and there cause serious bodily injury by striking her on the head with a metal rod." Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." V.T.C.A., Penal Code, Section 1.07(a)(7). Serious bodily injury has several definitions including "bodi-

ly injury that creates a substantial risk of death." V.T.C.A., Penal Code, Section 1.07(a)(34). The jury heard S. J.'s description of the blows she received, they observed the metal rod, they heard the doctors' description of the injuries and their opinions that the blows could have created a substantial risk of death. The evidence was sufficient for the jury to find that the blows to the head caused physical pain and created a substantial risk of death.

■ Johnson also contends the evidence was insufficient to prove his prior rape conviction was final before the commission of the instant offense. The prior conviction was proved with certified copies of the judgment and sentence. They reflected that Johnson entered a guilty plea and was convicted and sentenced on January 16, 1974. The record is silent concerning notice of appeal. Appellant offered no evidence.

The judgment and sentence do not indicate notice of appeal was given. If this were the case, the prior conviction became final during January, 1974. Once the State introduces such prima facie evidence of a final conviction, the defense has the burden of proving that the conviction was not final. *Ashley v. State,* 527 S.W.2d 302 (Tex.Cr. App.1975). No such proof was presented. Thus, the evidence shows the prior rape was final in January, 1974 and the instant offense was committed on June 21, 1977. The proof was adequate to show the prior conviction was final before the commission of the present offense.

■ Johnson contends the indictment fails to allege that he had sexual intercourse with S. J. because it alleges only that he did "compel her to submit to sexual intercourse." A motion to quash on this issue was overruled. Johnson argues that "[i]t is quite possible to compel one to submit to something without her actually submitting." We disagree. Taken in context, we find that only by straining the English language beyond common sense can the questioned phrase be read not to mean that sexual intercourse was accomplished. The motion to quash was properly overruled.

■ Complaint is made that the court should have ordered a mental examination of appellant. Johnson never requested such an examination. He did file a motion for continuance listing several reasons including that he "may not be of sound mind." In the absence of a request, the court was under no duty to order a mental examination.

■ Although he does not specifically assign it as error, in his argument concerning the mental examination, Johnson suggests that the court should have on its own motion ordered a competency hearing. He argues that the motion for continuance and a trial outburst made by Johnson in which he threatened to get the prosecutor were sufficient to create a bona fide doubt as to Johnson's competence. The language in the motion for continuance can best be described as tentative and conclusory. The trial outburst, while unwise, was lucid and was not repeated during the trial. Standing by themselves, these facts do not raise a reasonable doubt as to Johnson's competence.

■ Johnson contends that mug shots were admitted into evidence, thus implying that he had a criminal record. S. J. had identified Johnson at a pre-trial photo spread. The photos of Johnson that were in the photo spread, a front and profile, were admitted into evidence. The photo did not contain a number, date or any other writing. He contends that the photograph showed a chain around his neck which indicated that this was a mug shot. Men now often wear chains as jewelry. It does not follow that the jury concluded that this was a mug shot. We disagree with Johnson's argument that a profile picture implies a police record. The photograph was properly admitted.

■ Johnson contends that Officer Olivia Escobedo, who was present at the pre-trial photo spread, should not have been allowed to bolster S. J.'s unimpeached identification testimony by testifying that S. J. had identified appellant's picture. S. J. was vigorously cross-examined concerning her identification of Johnson. The State may bolster

an identification witness' testimony when that identification is challenged by cross-examination. *Proctor v. State*, 503 S.W.2d 566 (Tex.Cr.App.1974). No error is shown.

■ Complaint is made that S. J.'s prior, written statement, which was inconsistent with her trial testimony in that it stated her attacker had a moustache, should have been admitted into evidence. On direct examination, S. J. testified that her attacker did not have a moustache. On cross-examination, defense counsel had her read a prior, written statement wherein she described her attacker as having a moustache. Since the contents of the statement were before the jury, exclusion of the actual writing could not harm appellant.

Johnson's next contention concerns the admission of physical evidence from the building where the rape occurred. Johnson contends that this evidence, consisting of blood, hair and rope samples along with pictures of where these samples were taken, was the product of an illegal search and seizure. The place searched was a building which was leased by Johnson's father for the purpose of conducting business. The items seized were discovered in an open, nearly empty room; they were not concealed. The business had been moved and all that remained was some equipment. Johnson and another employee had a key to the building. The court ruled that Johnson had no standing to contest the search.

■ Standing can be established in three ways: (1) the accused is lawfully present at the premises during the search; (2) the item seized is an essential element of the offense, or (3) the accused has either proprietary or possessory interest in the place searched. *Kleasen v. State*, 560 S.W.2d 938 (Tex.Cr.App.1977). In the recent case of *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court stressed that Fourth Amendment rights are personal and claims of standing should be carefully scrutinized. The *Rakas* Court also gave careful consideration to Rakas' expectation of privacy in the place to be searched.

■ Johnson argues that he had a possessory interest in the property. The record reflects that he had access, as an employee, to the building which was searched. His father, another employee and the owner also had access to the building. Under the facts of this case we hold that Johnson's access as one of several employees and others with such access does not create a possessory interest. See *Commons v. State*, 575 S.W.2d 518 (Tex.Cr.App.1978). Similarly, the number of individuals with access negates any argument that he had an expectation of privacy in the entire building in general. The trial court correctly held that Johnson lacked standing.

■ Complaint is made that the prosecutor should not have been allowed to tell the jury on voir dire that aggravated rape can be accomplished by threats since the instant indictment charged only the actual causation of serious bodily injury. The statement on voir dire was a correct statement on the law. V.T.C.A., Penal Code, Section 21.03. The charge carefully and accurately authorized conviction only on proof of the actual infliction of serious bodily injury. No error is shown.

■ Appellant's next contention is that pictures of S. J., with her hair partially shaved to reveal her skull injuries, should not have been admitted since they depicted things done to S. J. by someone other than Johnson. A photograph that fairly and accurately depicts its subject matter is generally admissible. Any discrepancies between the picture and the subject at its relevant time, if properly pointed out, will not render the picture inadmissible. The jury was informed that S. J.'s head was shaved in the hospital. No error is shown.

■ The next three grounds of error all arise from the manner in which the court recessed the case for two days while a juror whose grandson died of a self-inflicted gunshot wound visited with her family. The court, in explaining the situation to the full jury, stated:

"Ladies and gentlemen, the grandson of Mrs. Paschal who sat on the end here

was in an accident, and was accidentally shot yesterday evening, and is in critical condition in the hospital. In view of that I am going to recess this trial until Friday morning. We will just have to find out what the situation is. We will keep you informed if, for instance, we cannot continue the trial Friday morning, we will contact you by telephone. But let me ask you to please not read anything in the paper about this case on trial. Do not talk to anybody, do not watch television about it. I want you to continue through the trial in your impartial frame of mind that you are now, and I do not want that violated because I do not want a mistrial. We have invested considerable time in the trial and expense, and I want this trial to continue to its completion the same way . . . .."

Johnson contends the court erred in making this final statement to the jury. He also contends that the court erred in not excusing the juror and continuing with eleven jurors and in not allowing him to more extensively question the juror.

▇ A trial judge necessarily has broad discretion to deal with the many unexpected situations which arise during trial. *Sapata v. State,* 574 S.W.2d 770 (Tex.Cr.App. 1978). A judge has only his common sense to guide him in dealing with a juror whose grandson dies of a self-inflicted gunshot wound during trial. We find the court's actions were all proper and in no way can be said to have infringed on Johnson's right to a fair trial. We disagree that the court's statements regarding a mistrial were an indication of a bias toward the State. No abuse of discretion is shown.

▇ Complaint is next made that the State was allowed to introduce hearsay evidence to establish that a pickup truck, which Johnson had sold prior to the time of the rape, could not have been the same one used the night of the rape. Officer Escobedo testified on redirect examination as follows:

"Q. Did you determine where that truck was the early morning hours of the night of June 21st, early morning hours of June 22?

"A. Yes, sir, Mr. Surginer gave us the statement saying that the truck was parked . . . ."

A series of comments and objections followed which resulted in the hearsay objection being sustained. The examination then continued:

"Q. From your investigation, do you know where the red and white pick-up was the night of June 21st and the early morning hours of June 22nd?

"A. Yes, sir, I do.

"Q. From your investigation, was it any where close to the Sage West Apartments or the Spindletop Lounge?

"A. No, sir, it wasn't."

No further objection was made.

The record does not reflect that this ultimate answer was based on hearsay information. Appellant's last hearsay objection was sustained. No further objection was made. Thus, the record reveals neither hearsay nor an adverse ruling. No error is shown.

▇ Complaint is next made that checks, offered by appellant, should have been admitted into evidence. Lanie Johnson, appellant's wife, testified that appellant was with her in Nueces County at the time of the alleged rape. The State presented evidence that Lanie Johnson was at a funeral in Louisiana at the time. In rebuttal, Lanie Johnson was recalled and testified that she negotiated two checks in Corpus Christi on June 22 and 23, 1977. She identified the checks which the court then refused to admit. Both checks are included in the record as a bill of exception. The checks, which bear the dates June 22 and 23, 1977, are drawn on the account of and signed by J. B. Terry. Lanie Johnson's testimony does not account for this discrepancy.

Lanie Johnson was allowed to testify fully concerning the checks. The checks, in that they do not bear her name or signature, are of relatively little support to her testimony. Given these facts, we conclude the actual checks had little, if any, proba-

tive value. No harm is shown in their exclusion.

Johnson next makes several contentions which are bottomed on his argument that a similar rape occurred three weeks prior to the instant rape and was committed by someone else. He contends that the prosecutor suppressed this evidence and that his motion for new trial based on this newly discovered evidence should have been granted.

At approximately 5:45 a. m. on June 3, 1977, M. S. was attacked in her home by Billy Bierschwale, a 17-year-old boy who lived in her neighborhood. Bierschwale matched the general physical description of appellant. He forced M. S. to submit with threats of death and he beat her with a wooden stick. There also was some indication that Bierschwale inserted something into his victim's vagina. During the course of the rape, Bierschwale made statements including the following: "Can you guess how old I am?", "I will come back", "I didn't mean to hurt you", and "Goodby, I love you." He repeatedly brushed his victim's hair during the attack. He eventually left, leaving his victim without significant physical injuries.

In his brief, appellant asserts, "The manner of commission of both offenses are so identical they almost certainly had to be committed by the same person." We cannot agree. The Bierschwale rape occurred in the victim's home, she was not seriously beaten, Bierschwale made non-hostile statements, he brushed his victim's hair, and he left his victim in her house. All of these factors are in sharp contrast to the abduction, hostile rape, relatively brutal beating, binding of hands and feet, use of an unoccupied building and act of leaving the victim along the side of the road which characterized the instant rape. There are similarities between the rapes. However, the differences are great. Significantly, the victims made positive identification of their attackers in both cases. The proffered testimony had no probative value in the instant case. Therefore, the State was under no duty to disclose this evidence and the court did not

err in denying a motion for new trial based on this evidence. See *Gill v. State*, 479 S.W.2d 289 (Tex.Cr.App.1972).

Complaint is next made that the prosecutor mentioned a defense motion to suppress in front of the jury. The defense was cross-examining a witness concerning testimony she gave during the motion to suppress hearing. The following then transpired:

"MR. MOBLEY: What hearing is that you referred to?

"MR. WESTERGREN: I am addressing the witness.

"MR. MOBLEY: What type of hearing?

"MR. WESTERGREN: May I proceed?

"MR. MOBLEY: Your Honor, we have had several hearings. We would like for him to indicate which hearing in order that we might be correct in looking at the same statement of facts.

"MR. WESTERGREN: He has got it right there. Mr. Botary knows very well.

"MR. MOBLEY: He is testifying not under oath. I'd like for him to state what hearing he is talking about.

"COURT: Would you compare that with that and see if it's the same thing?

"MR. MOBLEY: We would like the record to reflect that he is going to read from a statement of facts adduced at a hearing on a motion to suppress evidence on August 29, 1977.

"MR. WESTERGREN: Can we approach the Bench?

(Bench conference among Mr. Mobley, Mr. Westergren, and the Court out of hearing of the jury.)

"MR. WESTERGREN: I object to the Prosecutor bringing out the fact that it was a motion to suppress evidence. The jury had no business knowing there was a motion to suppress evidence.

"COURT: It wasn't necessary, and it shouldn't have been mentioned.

"MR. WESTERGREN: I move for a mistrial.

"COURT: Yes, sir, and I will deny your motion for a mistrial."

We agree with the trial court that the prosecutor's comments were unnecessary. However, any harm to Johnson could have been cured by an instruction to the jury. Such instruction was not requested. No reversible error is shown.

Complaint is next made of unresponsive testimony offered by a deputy sheriff, Jerry Nash. Nash testified on direct:

"Q. Have you seen head injuries in your experience as a police officer over the years?

"A. Yes, sir.

"Q. And from your experience, what type of wound did this appear to be, if you have an opinion?

"A. Well, sir, initially it would have been one caused by someone that tried to kill someone.

"MR. WESTERGREN: Objection, that's a conclusion. You can't do that.

"COURT: I will sustain the objection.

"MR. WESTERGREN: May I ask that the Court instruct the jury to disregard?

"COURT: I ask the jury to disregard.

"MR. WESTERGREN: And I move for a mistrial.

"COURT: Your motion is denied."

Nash's answer was improper. However, the jury had before it extensive testimony concerning the actual injuries sustained by S. J. It is unlikely that Nash's statement would influence their opinion of the nature of the injuries. The instruction was sufficient to cure the error.

Johnson next contends that a mistrial should have been granted when the prosecutor called a female witness to testify about appellant's general attitude towards women and when the court ruled this evidence was inadmissible the witness left the stand crying. Nancy Merritt, a friend of appellant's wife, was called as a witness by the State. On direct examination, the following occurred:

"Q. Have you had occasion to have conversations with the Defendant Jack Johnson?

"A. I don't understand.

"Q. What I mean is concerning girls and what they are like and what they like and don't like?

"MR. WESTERGREN: Objection, Your Honor, that's improper. It's not relevant either; it's going into general habits of the Defendant. It's not proper.

"COURT: I don't understand the relevancy of it.

"MR. MOBLEY: Well, what was his attitude?

"MR. WESTERGREN: Objection, Your Honor, the Defendant's attitude is not an issue.

"COURT: Sustained.

"MR. MOBLEY: Well, we feel that we can go into intent, Your Honor, as to his feeling and attitude about women in general.

"COURT: No, I will sustain the objection.

"MR. MOBLEY: Well, without saying what he says, if anything, have you had a conversation with him about his feeling toward women?

"MR. WESTERGREN: Objection, Your Honor, I think the Court has ruled on this.

"COURT: I will sustain the objection."

The record reflects that Merritt left the stand crying.

Appellant made a timely objection to the testimony which was sustained. The prosecutor then asked a similar question. The objection was sustained. No further questioning was attempted. Only in the most exceptional cases could an unsuccessful attempt to elicit inadmissible testimony require a mistrial. The instant questions did not inject harmful evidence before the jury. No reversible error is shown.

Johnson's final three grounds of error concern jury arguments. All three occurred during the guilt-innocence phase of the trial.

Complaint is made of the following argument:

"MR. MOBLEY: So look at her [Lanie Johnson]—a domineering father-in-law, a domineering father, a domineering husband. When she broke down, she knew she was lying. She knew she was lying. You heard her.

"MR. WESTERGREN: Your Honor, I would like to object to the statement about the domineering father-in-law. I don't think there's any whisper about a domineering father-in-law.

"MR. MOBLEY: They saw the witnesses themselves, Your Honor. They can draw their own conclusions.

"COURT: Objection is overruled."

■ There are inferences in the evidence which could be read to support the conclusion that Lanie Johnson had a domineering father-in-law. However, even if we were to agree that the statement was not supported by the evidence we cannot conclude that it was anything more than the most trivial misstatement. The State had presented its case in chief which included physical evidence and eyewitness testimony linking appellant to the rape. The defense had presented an alibi. The State had rebutted this through testimony indicating Lanie Johnson lied about the alibi. In a lawsuit involving these fact issues, the question of whether or not an alibi witness had a domineering father-in-law is peripheral. No harm is shown.

■ Complaint is made of this argument:

"This matter is up to you. So may people say, you know when something happens, 'Well, why doesn't somebody do something about it?' Why doesn't somebody do something about it. Well, S. J. [prosecutrix] has done all she can do. The officers have done all they can do. And I have done all I can do. Because when I sit down, it's going to be up to you. I just wonder in the morning when the people in this County read the paper and they find out that a man like this is on the street again, if they are going to say, 'Why doesn't somebody do something about it? Next time it could be my daughter or my wife.'

"MR. WESTERGREN: Objection, Your Honor. May we approach the Bench, Your Honor?

(The following conference was held out of the hearing of the jury panel.)

"MR. WESTERGREN: He's playing on the sympathy of the jury and putting the jury in the position of the victim, and I object on the grounds that it is inflammatory.

"COURT: I sustain the objection to placing the jury in the position of the victim.

"MR. WESTERGREN: I ask the Court to instruct the jury to disregard that statement.

"COURT: (Addresses the jury.) I will ask the jury to disregard the last remark of the Prosecutor.

"MR. WESTERGREN: I move for mistrial.

"COURT: It is denied."

While an instruction does not always cure error, it will normally cure error in jury argument where new facts are not injected into the record and no mandatory statute is violated.

■ The trial court properly instructed the jury to disregard the argument. We do not believe that the argument was such that the jury would not follow the instructions of the trial judge. The instruction was sufficient.

Finally, complaint is made of this argument:

"You know last Thursday afternoon, in your presence, in the presence of this Court, and in the presence of the people in this Court, this man stood up and threatened me. He said, 'I'll get you if it's the last thing I'll do.' Up to then you had seen a man who was sitting there, laughing, joking and talking to his attorney, making little notes, whispering to him, a man totally unconcerned until he saw his alibi go down the drain, and that's when you saw the same man that S. J. saw. You saw the violence in this man and how it can strike up just in a second because you were looking at a

time bomb. And you actually saw his demeanor. You saw his attitude, and you saw just exactly how violent he could get, because if he threatened a Prosecutor, a police officer, or anything else in a court of law, what could he do when he doesn't have the sanctity or protection of a court of law. What would he do to this girl right here? You saw it and heard it with your own eyes and ears.

" 'I'll get you if it's the last thing I do.' Well, let me tell you something, Mr. Johnson, you may get me. You may do it just like you said, if they walk you out of here today, but I don't think so. I don't think so because S. J. is only five feet two and unless a 17-year-old little girl's back is turned to you, you're not going to come at her.

"MR. WESTERGREN: Your Honor, I object to this. It's inflammatory. He's talking to my client and I don't believe it's proper; it's also rather juvenile.

"MR. MOBLEY: He talked to me, Your Honor, and I have a right to reply.

"COURT: Objection overruled.

*"BY MR. MOBLEY, CONT'D :*

"But if you get me, Mr. Johnson, in my opinion, it's going to be a long time from now and you're going to be an old man by the time you get out because I'm confident with the evidence that we submitted in this case that we have proved that you're guilty of aggravated rape beyond a reasonable doubt. And I'm confident on this evidence that this jury is going to find you guilty, and they are going to take you off the streets of this County, and you're going to be put away. And if I'm still alive, you can get me then."

Johnson earlier had directed the following outburst towards the prosecutor:

"DEFENDANT JACK JOHNSON: He's lying.

"MR. WESTERGREN: Your Honor, please, may we have just a moment?

"DEFENDANT JACK JOHNSON: He's lying ever since he started the case. He's trying to get me sent up for something I didn't do, and I'm going to get him if it's the last thing I do."

Appellant contends that it is improper for the prosecutor to personally address a non-testifying defendant. The State responds that the argument was a legitimate reply to Johnson's threat made in the course of the trial. Neither party has found a case where the prosecutor responds to a threat, made before the jury, to his life.

▇▇▇▇ Attempts by a party to suppress or fabricate evidence are admissible against the accused. *Rodriguez v. State,* 577 S.W.2d 491 (Tex.Cr.App.1979); *Baimbridge v. State,* 171 Tex.Cr.R. 395, 350 S.W.2d 923 (1961). Similarly, an attempt to intimidate the prosecution would be admissible. 31A C.J.S. Evidence § 179 (1964). Had Johnson made his threat outside the courtroom, it would have been admissible and the prosecutor would have been able to comment upon that evidence during jury arguments. Thus, the general subject of the argument was proper.

Johnson does not attack the content of the argument so much as the fact that the prosecutor directed the arguments at the non-testifying appellant personally. He relies upon *Bird v. State,* 527 S.W.2d 891 (Tex.Cr.App.1975). In *Bird,* we held that a prosecutor's asking, "Where did you get it?" while looking at Bird, who had not testified, constituted a comment on Bird's failure to testify. Johnson seeks a broad application of *Bird* to prohibit any comment made by a prosecutor directed at a defendant.

We do not believe *Bird* can be given the broad reading urged by Johnson; it stands for the much more limited proposition that directing a question at a non-testifying defendant constitutes a comment on that defendant's failure to testify. In any event, there was no question asked in the instant case and Johnson's outburst before the jury puts him in a different position than a truly non-testifying defendant.

▇▇▇▇ We see no reason to treat Johnson's in-court remark any different than evidence offered at the trial. The prosecutor may properly, within reason, comment on that evidence. We hold that given the serious nature of Johnson's threat the prosecutor's response was not such as to constitute error.

There is no reversible error. The judgment is affirmed.