Maximo MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–93–00111–CR.

Court of Appeals of Texas, Texarkana.

Submitted March 18, 1994.

Decided April 26, 1994.

Opinion Overruling Rehearing May 31, 1994.

Paul Schiffer, Houston, for appellant.

John B. Holmes, Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Maximo Martinez appeals from his conviction for possession with intent to deliver cocaine weighing at least 400 grams. After a bench trial, he was sentenced to twenty years' imprisonment and a fine of $5,000.00.

Martinez contends that the contraband should have been excluded from evidence because it was obtained in an illegal warrantless search and that the evidence is insufficient to establish that he participated in the offense. We overrule these contentions and affirm the judgment.

■ We view the evidence in the light most favorable to the prosecution. It shows that on June 4, 1991, officers with the Houston police department and agents of the Drug Enforcement Administration instituted an undercover operation to purchase two kilograms of cocaine. The purchase was set up by Kenneth Spence, a confidential informant, who had made the initial contact with the sellers.

The officers first met to discuss the operation. Spence made a telephone call and then the officers drove, in several vehicles, to an automobile body shop where Maximo Martinez and Pedro Martinez, a co-defendant, were supposed to be located. When the officers did not find them at this location,

Spence made another telephone call, and the officers and Spence proceeded to Peter G's Auto Sales, located at 3802 Reveille in Harris County, arriving shortly before 6:00 p.m.

Peter G's had been a gas station at one time and was now being operated as a used car lot. Spence and Officer Larry Allen, an undercover narcotics officer, drove into the parking lot at Peter G's. Allen was wearing a "wire" and kept the other officers informed of what he was doing and observing. Allen and Spence got out of their vehicle and approached Maximo and Pedro. Pedro asked them to wait a few minutes because there were still customers on the lot. Pedro also told Allen to act as if he were considering buying a car, and Allen did so. After waiting for a while, Allen approached Pedro and asked him where the "stuff" was. Pedro told him to wait a few minutes, so Allen went back to looking at cars. At some time during these events, Maximo told Allen to "be patient."

Thirty to forty-five minutes later, a brown Buick drove onto the parking lot. A Hispanic man got out and spoke to Maximo and Pedro in Spanish. The three talked for ten to fifteen minutes. Then Pedro opened the trunk of the Buick, pulled out a blue-wrapped package in the form of a brick, and placed it in a flowered bag. Pedro, with the bag in one hand and a jack handle in the other, walked to and entered a storage room that had been part of the old service station building. Shortly, Pedro came out of the storage room without the bag and spoke with Maximo and the Hispanic man for another five or ten minutes. The Hispanic man then got back in the Buick and drove away. Allen continued to look at cars for a few minutes and then again approached Pedro and asked him "what was going on." Pedro motioned for Allen to follow him, and the two of them went into the storage room, where Allen saw the same flowered bag on the floor. Pedro picked up the bag and handed it and a razor blade to Allen. Allen cut a corner of the blue-wrapped, brick-like package inside the bag and found what, based on his experience as a narcotics officer, he believed was cocaine. The substance was later confirmed to be cocaine by a chemist employed by the Houston police department.

Since Spence had told the officers that the deal was to be for two kilograms, Allen asked Pedro where the other kilogram was. Pedro replied that he thought there were two "keys" in the bag. Then Maximo, who had entered the room after the other two, said he was going to make a phone call to get the other kilogram.

Allen then walked back outside, where he saw Maximo get into a gray pickup truck and drive away. He waited another ten to fifteen minutes and then advised Pedro he would only wait thirty more minutes. Allen testified that he was becoming worried because he had already been at the location for over two hours, and all of the other such transactions had taken less time. At some point during this time, Pedro told Allen that the next time he would not have to wait so long, the "stuff" would be there waiting for him.

Maximo did not return right away, so Allen told Pedro that he would just take the one kilogram. Allen and Pedro went back into the storage room, where Allen once again cut into the brick with a razor blade. He told Pedro he was going to get the money, left the flowered bag with the brick in it on the floor of the storage room, left the storage room, and gave a prearranged signal to the other officers. The other officers quickly arrived at the scene and placed all those present under arrest. In order to maintain his cover, Allen was handcuffed along with Pedro and two employees of Peter G's Auto Sales. While in handcuffs, Allen saw Maximo drive up to the entrance to the car lot, stop, and then speed off.

The raiding officers arrived on the scene less than one minute after the bust signal. They arrested those present and seized the cocaine, recovering it in the flowered bag from the floor of the storage room where Allen had left it. Approximately one month later, Maximo Martinez was arrested while working at the same used car lot.

Martinez first contends that the trial court erred in failing to suppress the cocaine because it was seized during an illegal warrantless search. He brings this point under

U.S. CONST. amend. IV and TEX. CONST. art. I, § 9. He argues that the State failed to meet its burden of proof at the suppression hearing and also failed to prove the legality of the search beyond a reasonable doubt at the trial. The State counters that Martinez has no standing to complain of the seizure because he had no reasonable expectation of privacy in the substance, and even if he does have standing to raise the issue, there was probable cause and also exigent circumstances justifying a search and seizure without warrant.

The United States and Texas Constitutions protect persons against unreasonable searches and seizures by state action. Normally, police officers must first obtain a valid arrest or search warrant based on probable cause. Evidence seized illegally without a warrant may be subject to exclusion at trial. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The general rule is that, to have standing to raise a Fourth Amendment claim, a person must have an actual, subjective expectation of privacy in the thing seized or searched, and that the expectation must be one that society recognizes as reasonable. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring); *United States v. Pierce,* 959 F.2d 1297, 1303 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992). A person does not have a reasonable expectation of privacy in something he voluntarily exposes to the public. As stated by the Court in *Katz, supra,* "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. There is no legitimate expectation of privacy in information one turns over to third parties. *California v. Greenwood,* 486 U.S. 35, 41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30, 37 (1988) (*citing Smith v. Maryland,* 442 U.S. 735, 743–44, 99 S.Ct. 2577, 2581–82, 61 L.Ed.2d 220, 229 (1979)).

Consistent with this reasoning, Texas courts have held that a person's display of contraband to an undercover agent deprives that person of the right to claim a reasonable expectation of privacy. *See Vela v. State,* 775 S.W.2d 11, 12 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); *Garber v. State,* 671 S.W.2d 94, 97 (Tex.App.—El Paso 1984, no pet.). When a person displays contraband to another person for the purpose of initiating a sale of the contraband, he holds out the contraband for public display and sale and can no more claim an expectation of privacy in it than anyone else holding out his wares for sale to the public. The fact that the potential customer is an undercover agent makes no difference.

In this case, the undisputed testimony of Officer Allen shows that Pedro Martinez, with Maximo Martinez standing by, voluntarily handed to Allen the flowered bag containing the kilogram brick of cocaine. This voluntary display of the cocaine to Allen by Pedro deprived Maximo, who participated with Pedro in the transaction, of any right to claim a reasonable expectation of privacy regarding the cocaine. Thus, the seizure of the cocaine by the police was not subject to Fourth Amendment protection. *See Katz v. United States,* 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. The fact that the cocaine was seized by a member of the raiding team and not by Allen makes no difference. The issue is whether Maximo's expectation of privacy in the cocaine was reasonable, not who seized the cocaine. Maximo therefore has failed to show any privacy interest in the thing seized—the cocaine—and has no standing to challenge its seizure.

As to the premises searched, although Maximo's brief refers to the premises as his "place of business," nothing in the record of the suppression hearing indicates that Martinez had any possessory or proprietary interest in the premises. A defendant bears the burden of proving that he had a legitimate expectation of privacy in the premises searched. *Wilson v. State,* 692 S.W.2d 661, 667 (Tex.Crim.App.1984) (*citing Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)). One who asserts neither a possessory nor a proprietary interest in the place searched is not entitled to challenge a search of the area. *See Calloway v. State,* 743 S.W.2d 645, 651 (Tex.Crim.App. 1988) (*citing Rakas v. Illinois,* 439 U.S. 128,

147–48, 99 S.Ct. 421, 432–33, 58 L.Ed.2d 387, 403–04 (1978)). The record does not indicate that Martinez had any financial, proprietary, possessory, or other interest in the automobile dealership. Indeed, the evidence shows that he was only one of several employees there and had no ownership interest in the business or the shed where the cocaine was seized. He therefore has failed to show any privacy interest in the premises searched. *Johnson v. State,* 583 S.W.2d 399, 404 (Tex. Crim.App. [Panel Op.] 1979).

Martinez had no legitimate expectation of privacy in either the cocaine seized or the premises searched. Therefore, he has no standing to challenge the search. As we have found no standing, it is not necessary for us to consider whether probable cause and exigent circumstances existed for the warrantless search and seizure.

■ Martinez also asserts that the evidence is not sufficient to support his conviction. Specifically he contends that the evidence does not support the necessary finding that he exercised care, control, custody, or management of the cocaine.

■ In reviewing the sufficiency of the evidence in a criminal case, the appeals court must view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could find each element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Rivera v. State,* 808 S.W.2d 80 (Tex.Crim. App.1991). The standard of review is the same for direct and circumstantial evidence cases. *Freeman v. State,* 654 S.W.2d 450 (Tex.Crim.App.1983); *see also Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991).

■ To support a conviction for unlawful possession of a controlled substance, the State must adduce sufficient evidence to prove that the accused exercised care, control, and management over the contraband and that he knew the matter possessed was contraband. *Oaks v. State,* 642 S.W.2d 174, 177 (Tex.Crim.App.1982). Martinez does not argue sufficiency of the evidence regarding the second element.

■ Possession need not be exclusive, and evidence showing joint possession with another is sufficient. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex. Crim.App.1985). Where possession is not exclusive, the State must produce evidence of additional facts and circumstances affirmatively linking the accused to the contraband. *Cude v. State,* 716 S.W.2d at 47; *McGoldrick v. State,* 682 S.W.2d at 578. Mere presence in the vicinity of the contraband, or even mere knowledge of an offense taking place, will not establish that the accused exercised the requisite care, control, and management or that he had joint possession of the contraband. *Oaks v. State,* 642 S.W.2d at 177. But under the law of parties, a person may be held criminally responsible for the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicited or encouraged, aided, or attempted to aid the other person to commit the offense. TEX.PENAL CODE ANN. §§ 7.01, 7.02(a)(2) (Vernon 1974).

In this case, there is more than mere presence in the vicinity of the cocaine. According to Officer Allen's undisputed testimony, Maximo Martinez was closely involved with Pedro Martinez in the transaction and actively participated and assisted in its sale. Maximo was with Pedro when Pedro told Allen to wait a few minutes because there were customers on the car lot. While Allen was waiting, Maximo told Allen to "be patient." Allen saw Maximo and Pedro twice in conversations with the Hispanic man who drove the brown Buick with the cocaine in its trunk onto the car lot. After Allen complained that there should be two kilograms of cocaine, Maximo stated he was going to make a phone call to get the other kilogram. A rational fact finder could well conclude that Maximo's subsequent departure in a pickup truck was for the purpose of obtaining the other kilogram. Moreover, after the raid, Allen saw Maximo drive up to the entrance to the car lot, stop, and when he saw the officers, quickly drive off.

■ Maximo's actions are sufficient to establish affirmative links between himself and the cocaine. *See Humason v. State,* 728

S.W.2d 363, 365–66 (Tex.Crim.App.1987). These links to the contraband are clearly more than conjecture or speculation. *See Dickey v. State,* 693 S.W.2d 386, 389 (Tex. Crim.App.1984). This evidence also is sufficient to establish criminal responsibility under the law of parties, where evidence is sufficient if it shows that the actor was physically present at the commission of the offense and encouraged the commission of the offense by either word or agreement. *Lewis v. State,* 856 S.W.2d 271, 274 (Tex.App.— Texarkana 1993, no pet.).

■ Martinez argues that his statement that he would make a telephone call to get the other kilogram occurred after the offense was completed, and apparently he contends that the statement is therefore irrelevant. Martinez was charged with possession of cocaine with intent to deliver. The evidence indicates that Maximo and Pedro remained in possession of the kilogram after the statement in question—the drug transaction being postponed so that Maximo could obtain the second kilogram. The offense, therefore, was of a continuing nature until the police actually seized the cocaine. Any actions or statements by Maximo during this period are relevant evidence of his guilt or innocence at trial and may be considered in reviewing the sufficiency of the evidence claim.

Martinez also argues that *Davila v. State,* 664 S.W.2d 722 (Tex.Crim.App.1984), supports his claim that he did not exercise the requisite care, custody, control, and management of the cocaine. Even disregarding the fact that *Davila* involved a conviction for delivery of contraband and the instant case is for possession with intent to deliver, the facts of the two cases are easily distinguishable. In *Davila* the evidence showed that, at most, the defendant, Gloria Davila, merely relayed a third party's offer to buy contraband to Davila's husband, and her husband, with no help from Davila, negotiated and completed the drug transaction. *Id.* at 723–24. In this case, the testimony of Officer Allen clearly indicates that Martinez was an active partici-

pant in the attempted drug transaction and not merely an innocent intermediary.

■ Martinez was physically present at the commission of the offense and actively encouraged it by word and deed. *Lewis v. State,* 856 S.W.2d at 274. The evidence is both legally and factually sufficient for a reasonable trier of fact to find Martinez guilty beyond a reasonable doubt as a party to the offense.[1]

The judgment is affirmed.

## ON MOTION FOR REHEARING

■ In his motion for rehearing, Martinez argues that there is no evidence that the cocaine was seized in the storage room where the officer saw it. Martinez correctly notes that the seizing officer did not testify and the flowered bag was not introduced as evidence. However, Allen (the undercover officer) testified without contradiction. He described the bag, cocaine, and the blue wrapping covering the cocaine; said that the bag was left in the storage room; told how quickly he gave the "bust signal" after he and Martinez left the storage room; and how quickly the raiding officers secured the area. Mike Sanders, a DEA agent and member of the raiding party, stated without dispute that he saw the brick-type substance in a blue wrapping in a bag in the storage room after everyone had been placed under arrest, although he could not remember what the bag looked like. Paul Powell, an officer with the Houston police department, testified without dispute that he saw Officer Bobby Hebert, who had accompanied Powell on the raid, proceed directly to the storage room and recover a brick-like object wrapped in blue plastic-type paper, exactly as Allen had described the brick of cocaine left in the storage room. Allen also testified that immediately after the raid he saw Hebert with the blue package after Hebert retrieved it.

This undisputed testimony was sufficient for a reasonable trier of fact to find that the

---

1. Since the exclusive fact jurisdiction of the courts of appeals under the state constitution both permits and requires a review of the factual sufficiency when sufficiency of the evidence is challenged on appeal, we have done so in this appeal. *See Stone v. State,* 823 S.W.2d 375 (Tex. App.—Austin 1992, pet. ref'd, untimely filed); Susan Bleil & Charles Bleil, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question,* 23 ST. MARY'S L.J. 423 (1991).

blue-wrapped package containing cocaine that was shown to Allen and left in the storage room in the flowered bag was the same blue-wrapped package recovered by Officer Hebert, as witnessed by the above-named officers. The flowered bag may have been left in the storage room or lost, but the testimony clearly shows that the cocaine was seized where it was left.

Martinez also argues that there is testimony that Pedro owned the auto sales division and that he, Maximo, owned the mechanic's work area. The following excerpts from Alabarran's testimony are the only parts of her testimony dealing with ownership of the premises:

Q. And do you know who owns Peter G's Auto Sales?

A. No, because I never get involved in who is the owner. Probably he [Pedro], I don't know.

. . . .

Q. June 4, 1991, the day that you were arrested, was Max working at Peter G's Auto Sales on Reveille?

A. Yes.

Q. Max didn't own this place then, did he?

A. No, sir.

Q. He was just working out of here until he could get his own shop; isn't that correct?

MS. PARSONS: Objection, leading.

MR. LAVINE: This is cross examination.

THE COURT: Overruled.

Q. (Mr. Lavine) Max was working out of here until he had a place of his own; isn't that correct?

A. Exactly.

Q. This storage room didn't belong to Max, did it?

A. No, sir.

This testimony falls far short of proving that Martinez had an ownership interest in the premises.

For the reasons stated, the motion for rehearing is overruled.