IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00018-CR

No. 10-09-00019-CR

 

American Contractors Indemnity Co., 

d/b/a Texas Bonding Co., Sue A. Taylor, 

agent, d/b/a Bailman Bond Co. (Ellis County),

 

                                                                                                          Appellant

 v.

 

The State of Texas,

                                                                                                          Appellee

 

 

 



From the County Court
at Law No. 2

Ellis County, Texas

Trial Court Nos. 08-C-3049
and 08-C-3093

 



MEMORANDUM  Opinion



 








            Appellant has filed motions
to dismiss these appeals because the trial court has granted Appellant’s
motions for new trial.  According to the certificates of conference, the State
does not oppose dismissal of the appeals.  Accordingly, they are dismissed.  See
Tex. R. App. P. 42.1(a)(1).

 

 

FELIPE REYNA

                                                                                                Justice


Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Appeals dismissed

Opinion
delivered and filed February 18, 2009

[CV06]








 

 

 






an>
After the objection was overruled, the prosecutor asked Fickey whether he observed any "wounds,
scratches or injuries" on Appellant on the night of the murder, to which Fickey answered "No." 
          Appellant attacks the practice of allowing jurors to question witnesses. Arguing that the
procedure itself encourages jurors to become advocates rather than disinterested fact-finders, he
contends the practice should be prohibited. Specifically, he sees error and harm in the court
allowing the prosecutor to offer additional evidence after being "tipped off" by a juror's question
that the State's proof was lacking on a material fact. 
SHOULD JURORS BE ALLOWED TO ALERT COUNSEL?
          This quote from United States v. Callahan is featured in the two recent opinions which
place Texas in the company of jurisdictions allowing jurors to question witnesses:
There is nothing improper about the practice of allowing occasional questions from jurors
to be asked of witnesses. If a juror is unclear as to a point in the proof, it makes good
common sense to allow questions to be asked about it. If nothing else, the question should
alert trial counsel that a particular factual issue may need more extensive development. 
Trials exist to develop truth. It may sometimes be that counsel are so familiar with a case
that they fail to see problems that would naturally bother a juror who is presented with the
facts the first time.
Allen v. State, 807 S.W.2d 639, 642 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (quoting
Callahan, 588 F.2d at 1086) (emphasis added); Buchanan v. State, 807 S.W.2d 644, 646 (Tex.
App.—Houston [14th Dist.] 1991, no pet.). The principle implicit in the quote—that jurors need
to be well-informed on the pertinent facts to determine truth and reach a fair and just verdict—is
indisputable in the abstract. What is bothersome, however, is the explicit acknowledgement that
jurors should be allowed to alert counsel that additional evidence should be introduced on a
material fact. 
          The first admonition the court gives a jury after its selection is "Do not talk to the
lawyers." See Tex. R. Civ. P. 226a. The purpose of the instruction is to preserve the integrity
of the jury and the judicial process, avoid the appearance of impropriety, and guarantee all parties
a fair and impartial trial. Shut off from any communication with the jury, counsel for both sides
are left to wonder what jurors are thinking and to speculate on what evidence the jury will find
most persuasive. The instruction places both sides at an equal disadvantage in "reading the jury." 
What could be more helpful to counsel—particularly to a prosecutor—than to hear firsthand from
jurors during the trial the things which concern them about the evidence? Questions are a form
of communication, often signaling in subtle ways the questioner's unexpressed concerns, interests,
desires or anxieties. Essentially, the Callahan court is encouraging communication between the
jury and counsel during the trial, a practice which undermines the court's admonition: "Do not talk
to the lawyers." Sanctioning this practice in a criminal case is particularly troubling.
          A procedure which would encourage jurors to communicate directly with the prosecutor
during the trial on matters of trial strategy, particularly on the type of evidence the prosecution
should introduce or emphasize to ultimately persuade the jury on guilt-innocence or punishment,
would be so patently and fundamentally unfair to the defendant that even the most state's-oriented
advocate could scarcely condone it. Using the trial judge as a conduit for the communication
would not remove or lessen the taint. Yet, if jurors can alert a prosecutor through questions that
the state needs to introduce or "shore up" evidence on a particular matter—as the quote from
Callahan condones and encourages—then what would be wrong with allowing a juror to tell the
prosecutor, I am not yet convinced beyond a reasonable doubt on the defendant's identity as the
person who committed the offense; the state should introduce more evidence bearing on that fact? 
Either way the juror is being allowed to communicate with the prosecutor.
          If the state does not recognize that it needs to strengthen its proof on identity, and fails to
do so, and if the jury has a reasonable doubt about the defendant's identity and ultimate guilt, then
an acquittal will result. One must seriously question whether jurors should be allowed to assist
either side in tipping the scales of justice. 
RISK OF HARM
          Allowing jurors to question witnesses, even indirectly, carries an inherent risk of harm to
a criminal defendant. U.S. v. Nivica, 887 F.2d 1110, 1123 (1st Cir. 1989); DeBenedetto v.
Goodyear Tire & Rubber Co., 754 F.2d 512, 516 (4th Cir. 1985). The danger is that the
prosecutor, after discerning a juror's interest in certain facts or concern about a lack of evidence
on a material fact, will use that information to gain an unfair advantage in the trial, either by
improving the chances of obtaining a conviction in a marginal case or magnifying the punishment. 
          Under the procedure used by the trial court, questions are reviewed by counsel before the
court rules on their propriety and admissibility. This is necessary to allow counsel to preserve
error by timely objecting to a proposed question, a necessary prerequisite. See Tex. R. App. P.
52(a). Consequently, regardless of how the court may rule on its admissibility, the prosecutor is
aware of the question and all it may communicate about the juror's concerns. 
PROHIBIT THE PRACTICE OR CONTROL IT?
          An overwhelming number of jurisdictions allow jurors to question witnesses but carefully
monitor the practice for an abuse of discretion. Allen, 807 S.W.2d at 640-41. Appellant would
have us outlaw the practice entirely, arguing that it encourages jurors to become advocates rather
than disinterested fact-finders. This we decline to do. Although we do not ban the practice, the
inherent danger that the state will use a juror's question to gain an unfair advantage in the
presentation of its case requires the closest scrutiny of the trial court's discretion whenever it
allows jurors to pose questions to witnesses. Whenever the record gives the least appearance that
the prosecution has gained an unfair advantage through the procedure used by the trial court, this
court will not hesitate to find an abuse of discretion. 
FINDING AN ABUSE OF DISCRETION AND HARM
          Essentially, Appellant' objection was that the court should not allow the prosecutor to
recall Detective Fickey after being "tipped off" by the juror's question that the prosecution needed
to strengthen its proof. The record is clear that this is what occurred. When the objection was
overruled, the State essentially proved through Fickey's testimony that the blood in the hall had
to be Lisa Johns's because Appellant had no observable "wounds, scratches or injuries." Thus,
the record demonstrates that the prosecution obtained an unfair advantage from the juror's
question. 
          Whether a witness should be recalled is within the court's discretion. See Johnson v. State,
583 S.W.2d 399, 405 (Tex. Crim. App. [Panel Op.] 1979); Laws v. State, 549 S.W.2d 738, 741
(Tex. Crim. App. 1977). Here, the abuse of discretion occurred when the court allowed the State
to use the "communication" from the juror to the prosecutor—"Please prove whose blood was in
the hall"—to strengthen its case against Appellant by recalling Fickey. Although the court did not
abuse its discretion merely by authorizing jurors to pose questions to witnesses, the error simply
would not have occurred without the practice being authorized.   Having found an abuse of
discretion, we do not proceed to a harm analysis because addressing the error itself answers the
harm inquiry. See Nunfio v. State, 808 S.W.2d 482, 485 (Tex. Crim. App. 1991). Logically, an
appellate court cannot determine beyond a reasonable doubt that an unfair advantage which the
state gained from a juror's question did not contribute to either conviction or punishment. Under
the circumstances, a harmless-error analysis would be fruitless. Id. Consequently, point two is
sustained, the judgment reversed, and the cause remanded for a new trial. The remaining points
are not reached.
          Recognizing that the practice has been approved in some form in every jurisdiction where
the question has been considered, we refuse to ban it entirely but leave to the trial court's sound
discretion whether and how jurors should be allowed to question witnesses in a criminal trial. 
Moreover, we accept the premise that jurors should be as well informed as possible to return just
and fair verdicts. However, one cannot escape the reality that in this trial, other than setting the
stage for reversible error, the practice was of negligible value to the jury. Considering the
inherent risk of harm to the defendant from allowing any communication between the jury and the
prosecutor during the trial, the practice's usefulness is highly questionable. The judicial resources
of this state are strained to the limit. When balanced against the practice's marginal utility, the
time and expense of a retrial and the possibility of another appeal seem a high price to pay for its
continued use.         
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice
Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Reversed and remanded
Opinion issued and filed July 11, 1991
Publish