**AFFIRM; and Opinion Filed February 24, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-00498-CR

No. 05-12-01447-CR

**DENNIS EDWARD WILLIAMS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause Nos. F08-35085 & F08-35087**

## MEMORANDUM OPINION

Before Justices O'Neill, Myers, and Evans
Opinion by Justice O'Neill

Appellant Dennis Edward Williams was indicted for possession of a controlled substance with the intent to distribute. After the trial court denied his motion to suppress, he pleaded guilty. The trial court deferred adjudication of guilt and placed him on community supervision for four years. On appeal, appellant argues the trial court erred by concluding he lacked standing to challenge the unlawful entry of the warehouse and by concluding the police had reasonable suspicion to enter his bedroom inside the warehouse. We affirm.

Investigators with the Irving police department received information from a reliable informant regarding a suspected "chop shop" on a piece of property. The property consisted of two buildings, with a shared parking lot, but two different addresses: 2516 East Shady Grove and 2524 East Shady Grove.

The informant told detectives a stolen gray Chevy pickup truck would be dropped off at 2524 East Shady Grove on July 2, 2008. A detective went to the location and subsequently saw a gray or silver Chevy truck in the parking lot. After checking the license plate number, the detective confirmed the truck had been reported stolen.

When the detective returned to the location a few minutes later, the truck was no longer in the parking lot. He observed "five or six Hispanic males walk out of 2516 across [the] common parking lot" and enter the building at 2524 East Shady Grove. Based on his experience, the detective believed the truck had been moved inside one of the buildings, and the buildings were in fact being used as a chop shop for stolen cars.

A magistrate signed search warrants for both addresses on July 3, 2008. Investigators Brian Schutt and Stephen Junker were part of the team that executed the search warrant at 2516 East Shady Grove. Junker testified at the suppression hearing that he entered the bottom of the warehouse and then went upstairs towards some empty office space. Junker continued down the hallway towards the workshop in the back. He testified that as they moved through the warehouse, he smelled the odor of ether, which is used in cooking methamphetamine. The smell intensified as he moved down the hallway and got closer to an open door, which was later determined to be appellant's bedroom. In plain view, investigators saw a baggie of methamphetamine as well as small bowls they recognized as drug paraphernalia. When they entered the room, the ether odor was even more pungent.

Appellant was arrested and charged with possession with intent to deliver methamphetamine. He filed a motion to suppress. The trial court conducted several hearings on the motion. During the first hearing, appellant argued the search warrant for 2516 East Shady Grove contained insufficient probable cause, and the police unlawfully entered the warehouse or, at the very least, unlawfully entered the room he had lived in for the past twenty years. During a

second hearing, the State raised the issue of whether appellant had standing to challenge the search of the warehouse because while the State agreed appellant had an expectation of privacy in his room, that expectation of privacy did not extend to the rest of the 4,000-square-foot warehouse. A final hearing was held in which appellant argued officers used a crow bar to enter his room; however, the court ultimately determined appellant's testimony and evidence was not credible.

The trial court denied appellant's motion to suppress and made the following findings of fact and conclusions of law: (1) the search warrant affidavit for 2516 East Shady Grove did not state sufficient probable cause to authorize issuance of a warrant; therefore, it was in violation of the U.S. and Texas Constitutions and applicable statutes; (2) appellant did not have a reasonable expectation of privacy in the premise at 2516 outside his room; (3) although the officers were on the premises based on an invalid search warrant, appellant did not have standing to object to their presence in the main building of 2516; (4) officers had a reasonable basis for pursuing the smell of methamphetamine; therefore, their entry into appellant's room was not illegal; and (5) no good faith exception to the probable cause requirement existed. This appeal followed.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The judge is the sole trier of fact and judge of the credibility of witnesses and the weight to be given their testimony. *Id*. He is entitled to believe or disbelieve all or part of the witness's testimony, even if that testimony is uncontroverted, because he had the opportunity to observe the witness's demeanor and appearance. *Id*.

If the trial court makes express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports these factual findings. *Id*. We review the trial court's application of the law of search and seizure to the facts de novo. *Id*.

We will sustain the trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id*. (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

We first address appellant's argument that the trial court erred in concluding he did not have a reasonable expectation of privacy in the warehouse area outside of his room. As previously stated, the State does not contest appellant's expectation of privacy in his room.

In presenting state and federal constitutional claims based on unlawful search and seizure, "Appellant must be within the purview of constitutional protection." *State v. Comeaux*, 818 S.W.2d 46, 51 (Tex. Crim. App. 1991). Appellant, as the movant to suppress evidence, bore the burden not only to establish the search and seizure of evidence were illegal, but also to show he had standing to contest the search and seizure, that is, he had a reasonable expectation of privacy in the premises searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Granados v. State*, 85 S.W.3d 217, 222–23 (Tex. Crim. App. 2002).

A defendant can demonstrate a legitimate expectation of privacy by showing he had a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable. *Granados*, 85 S.W.3d at 223. Several factors are relevant to determining whether a given privacy claim is objectionably reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Id*.; *see also Myrick v. State*, 412 S.W.3d 60, 65–66 (Tex. App.—Texarkana 2013, no pet.). The list is not exhaustive and no one factor is dispositive of a

particular assertion of privacy; rather, we examine the totality of the circumstances surrounding the search. *Granados*, 85 S.W.3d at 223.

While the Fourth Amendment's prohibition on unreasonable searches and seizures applies to property used for residential purposes, as well as to property put to commercial use, "[p]roperty used for commercial purposes is treated differently for Fourth Amendment purposes from residential property." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). An expectation of privacy in commercial premises is different from, and indeed less than, a similar expectation in an individual's home. *Id*. (citing *New York v. Burger*, 482 U.S. 691, 700 (1987)).

Because the building in question was a 4,000 square-foot commercial warehouse, appellant's expectation of privacy is less; however, we shall consider whether he met his burden to prove a reasonable expectation of privacy in the area outside of his room by considering the relevant factors and the evidence in the record.

The record shows appellant had lived in a 10x12 upstairs room in the warehouse located at 2516 East Shady Grove for twenty years. He did not pay rent, but rather provided night security for the warehouse. During the day, he worked at the warehouse as a production manager for Houston Metal Fabrication & Stamping. The company was owned by Henry Houston and employed about five other workers. Appellant testified that he, Henry, and another employee had a key to the warehouse and could gain access after hours. He also testified employees could stay after hours when the business closed.

While appellant kept some personal items and toiletries locked in his room, he kept a motorcycle and tools downstairs in the shop. He received personal and business mail at the warehouse. He testified he believed he had a possessory right to be in the building and an expectation of privacy.

Despite having a key to the warehouse, living there for years, keeping some personal items in the common area, and providing night security to the warehouse, we agree with the trial court that these facts do not establish that appellant had a possessory interest in the area outside of his room or that he had complete dominion or control to exclude others.

In *Johnson v. State*, 583 S.W.2d 399 (Tex. Crim. App. 1979), the defendant argued he had standing to challenge evidence of an aggravated sexual assault discovered inside a warehouse. At the time of the search, the building was leased by the defendant's father. *Id.* at 404. However, officers discovered the incriminating evidence in an open, nearly empty room. *Id.* The defendant argued he had a possessory interest in the building, but the trial court disagreed. *Id.* The evidence showed the defendant, his father, the owner, and another employee had keys providing access to the building. *Id.* The trial court concluded the defendant's access, as one of several people with such access, did not create a possessory interest. *Id.* Further, "the number of individuals with access negates any argument that he had an expectation of privacy in the entire building in general." *Id.*; *see also Martinez v. State*, 880 S.W.2d 72, 77 (Tex. App.— Texarkana 1994, no pet.) (concluding appellant did not have standing when evidence showed he was one of several employees and had no ownership interest in the automobile dealership).

Similar to *Johnson*, appellant cannot rely on the fact that he had a key and the ability to exclude others from the warehouse. He was not the only person with a key. He testified the owner and at least one other employee had a key. Appellant also acknowledged other employees had access to the building after business hours. Moreover and also relevant to our analysis, is that the court in *Johnson* considered the warehouse "inactive" because the business had mostly been moved and at the time of the search, only some equipment remained inside. *Johnson*, 583 S.W.2d at 404. Yet, the court still concluded defendant did not have an expectation of privacy. Here, the warehouse was active and operational; therefore, appellant could not have reasonably

expected privacy in the entire building. While we acknowledge the Supreme Court has held there can be expectations of privacy in one's work place, the Court has also stated some offices may be so open to fellow employees or the public that no expectation of privacy is reasonable. *See O'Connor v. Ortega*, 480 U.S. 709, 718 (1987); *see also Mancusi v. DeForte*, 392 U.S. 364, 369 (1968). Such is the case here. Thus, appellant did not have a possessory interest in the area searched nor did he have complete control with the right to exclude others.

As to the fourth factor–whether appellant took normal precautions customarily taken by those seeking privacy–we agree with the State that he took such precautions as to his room but did not do so with respect to the rest of the warehouse. Appellant locked his room when he left, and he testified he left personal items in his room. However, officers testified his room was open when they conducted the search.

Appellant's work-related items like tools and equipment were kept in the shop. While he testified he secured the warehouse and checked its motion detectors, we are not persuaded that these actions were in furtherance of any expectation of privacy he had in the warehouse. Rather, these actions were likely expected in his role as a night watchman, a job he traded for rent.

Moreover, it was logical for the trial court to reason that if appellant believed he had private use of the entire warehouse, he would not have cooked methamphetamine in his small 10x12 room. This indicates appellant did not use the warehouse for his private affairs, which is the fifth factor to consider.

Lastly, appellant has failed to show his claim of privacy is consistent with historical notions of privacy. As noted above, an employee's privacy expectation does not automatically cover the entire workplace. Rather, an employee's expectation of privacy is addressed on a case-by-case basis. *O'Connor*, 480 U.S. at 718. An expectation of privacy does not exist under these facts. Further, similar to those cases holding that a tenant does not have a reasonable expectation

of privacy in common areas like hallways of an apartment complex, we conclude that under these facts renting a room inside a warehouse did not create an expectation of privacy in those common areas outside appellant's room. *See,e.g.*, *Morgan v. State*, No. 05-12-01443-CR, 2012 WL 6327202, at *3 (Tex. App.—Dallas Dec. 4, 2013, no pet.) (mem. op., not designated for publication) (citing *Evans v. State*, 995 S.W.2d 284, 285–86 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)).

Accordingly, the trial court did not abuse its discretion by determining appellant lacked standing to contest the entry into 2516 East Shady Grove. Appellant's first issue is overruled.

In his second issue, appellant argues the trial court erroneously concluded the police had a reasonable basis to enter his bedroom. The State responds the search was legal because after entering the building, officers smelled the odor of ether which was emanating from the open door of appellant's bedroom, and this provided probable cause for them to enter his room upon which they discovered the drugs in plain view.

The rationale of the plain view doctrine is that if contraband is left in open view and is observed from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment, or at least no search independent of the initial intrusion that gave the officers their vantage point. *Cain v. State*, No. 05-12-00580-CR, 2013 WL 3463462, at *4 (Tex. App.—Dallas July 8, 2013, no pet.) (mem. op., not designated for publication). Officers may seize evidence without a warrant when (1) the officer sees an item in plain view at a vantage point where he has a right to be; (2) it is immediately apparent that the item seized constituted evidence; and (3) the law enforcement officer has a lawful right of access. *Id*.

As concluded above, appellant does not have standing to challenge the officers' presence in the building. Thus, the officers were legitimately in a position to smell ether as they

proceeded to walk through the building. Officer Junker testified he smelled the pungent odor within a couple feet of the door to appellant's room. Officer Schutt testified he could smell the odor as they walked down the hallway and once they reached and entered appellant's room, it got stronger. Then from a vantage point Officer Schutt had a right to be, he testified "I saw methamphetamine laying in plain view." Officer Junker also testified he saw bowls and baggies of methamphetamine in plain view. As such, the trial court properly concluded officers had a reasonable basis for pursuing the smell, and entry into appellant's room was not illegal under the plain view doctrine.

In reaching this conclusion, we are not persuaded by appellant's arguments that his door was closed and locked, and only after a SWAT team busted it open, could officers see inside. The trial court heard testimony and evidence on this issue and determined defendant was not credible. We defer to such credibility determinations. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (en banc) ("At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony."). Appellant's second issue is overruled.

We affirm the trial court's judgments.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120498F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DENNIS EDWARD WILLIAMS, Appellant

No. 05-12-00498-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F08-35087.
Opinion delivered by Justice O'Neill.
Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 24th day of February, 2014.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DENNIS EDWARD WILLIAMS, Appellant

No. 05-12-01447-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F08-35085-Y.
Opinion delivered by Justice O'Neill.
Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 24th day of February, 2014.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE